# EXHIBIT D

## SETTLEMENT AGREEMENT

**WHEREAS,** Oppenheimer & Co. Inc. ("Oppenheimer") commenced a civil action against Defendant DocuLynx, Inc., as successor-in-interest to Anacomp, Inc. ("DocuLynx") (Oppenheimer and DocuLynx shall be referred to herein as the "Parties") in the United States District Court for the Southern District of New York, titled, *Oppenheimer & Co. Inc. v. DocuLynx, Inc., as successor-in-interest to Anacomp, Inc.,* Case No.: 17-CV-05940 (SHS) (the "Action"); and

**WHEREAS,** DocuLynx has alleged counterclaims against Oppenheimer in the Action (the "Counterclaims"); and

**WHEREAS,** DocuLynx denies any and all liability to Oppenheimer under the facts alleged in the Action; and

**WHEREAS,** Oppenheimer denies any and all liability to DocuLynx under the facts alleged in the Counterclaims; and

**WHEREAS,** the Parties desire to resolve the Action, including DocuLynx's Counterclaims, without the cost and time associated with litigation:

**NOW THEREFORE,** in consideration of the mutual undertakings hereinafter set forth, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby stipulate and agree as follows:

1.      The Parties acknowledge that the terms of this Settlement Agreement shall be set forth in greater detail in a separate written agreement between the Parties and that the Parties agree to work in good-faith to execute any additional agreements necessary to affect the terms of this this Settlement Agreement;

2.      DocuLynx acknowledges that Oppenheimer has no obligation to make payment to DocuLynx for any services allegedly provided (either prior to or following the execution of this

1

2638206_2

Settlement Agreement) except as specifically provided for within this Settlement Agreement or in any subsequent written agreement executed by the Parties;

3.      DocuLynx shall continue to provide data storage services to Oppenheimer for data which was previously imaged by and is currently in the possession of DocuLynx (the "Oppenheimer Data") for a period of seven (7) years following the execution of the appropriate agreements (the "Contract Term");

4.      Throughout the Contract Term, Oppenheimer shall periodically advise DocuLynx in writing with regard to any Oppenheimer Data that may be deleted.  Once notified that Oppenheimer Data may be deleted, DocuLynx may delete the Oppenheimer Data at its discretion, but no later than the expiration of the Contract Term;

5.      Oppenheimer shall have no obligation to provide additional data to DocuLynx for imaging and storage, nor shall DocuLynx have any obligation to accept any additional data from Oppenheimer for imaging and storage;

6.      DocuLynx shall provide Oppenheimer with a perpetual license for no less than 110 users to utilize DoucLynx's software for the purpose of accessing the Oppenheimer Data during the Contract Term.  This license contemplates access for regulatory compliance and the related ability to download and print reports to ensure compliance.  It does not contemplate downloading, copying or printing data en masse;

7.      DocuLynx acknowledges that the Oppenheimer Data belongs solely to Oppenheimer and that DocuLynx has no ownership interest in the Oppenheimer Data or right to possess the Oppenheimer Data, other than for the purposes of providing the above described services to Oppenheimer;

2

8.      DocuLynx shall be required to hold the Oppenheimer Data in escrow with a third-party to be agreed upon by the Parties (the "Data Escrow") during the Contract Term, which agreement shall not be unreasonably withheld;

9.      DocuLynx shall pay all costs associated with the Data Escrow;

10.     DocuLynx acknowledges that, in the event that DocuLynx and the escrow agent shall cease providing services to Oppenheimer, Oppenheimer shall immediately be entitled to the return of the Oppenheimer Data from the Data Escrow in the same format as the Oppenheimer Data was originally provided to DocuLynx, irrespective of any claims by DocuLynx against Oppenheimer;

11.     DocuLynx acknowledges that any failure on the part of DocuLynx or the Data Escrow to provide Oppenheimer with reasonable access to the Oppenheimer Data, for any reason, shall cause Oppenheimer to incur irreparable harm and that Oppenheimer shall be entitled to injunctive relief in order to prevent said irreparable harm;

12.     In no event shall Doculynx be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that Doculynx shall use reasonable efforts which are consistent with accepted practices in the industry to resume performance as soon as practicable under the circumstances.

3

13. In exchange for the above described services, Oppenheimer agrees to compensate DocuLynx in the total sum of ONE MILLION THREE HUNDRED EIGHTY SIX THOUSAND DOLLARS AND ZERO CENTS ($1,386,000.00) (the "Contract Sum");

14. The Contract Sum shall be paid in seven (7) equal annual installments of ONE HUNDRED NINETY EIGHT THOUSAND DOLLARS AND ZERO CENTS ($198,000.00) (the "Annual Installments"), with the first Annual Installment being due three (3) business days from Oppenheimer's receipt of the first Annual Installment Bond, as described within Paragraph 14 herein. Each subsequent anniversary shall be one (1) year from the date of the execution of the additional agreement(s) referenced within Paragraph 1 herein;

15. Prior to being entitled to receive any Annual Installment, DocuLynx shall provide Oppenheimer with written confirmation that DocuLynx's performance under said Annual Installment has been fully bonded and that should DocuLynx cease providing services to Oppenheimer for any reason, Oppenheimer shall immediately be entitled to the return of the prorated unused portion of the respective Annual Installment (the "Annual Installment Bond");

16. Oppenheimer shall make payment of the Annual Installment within three (3) business days of receipt of the respective Annual Payment Bond from DocuLynx;

17. Should either party commit a material breach of this Settlement Agreement, or of any of the terms of the additional agreements referenced within Paragraph 1 herein, the other party shall provide written notice of said material breach by Federal Express. Should the breaching party fail to cure said material breach within ten (10) days of written notice of default, the other party shall be entitled to recover any fees and costs incurred, including reasonable attorneys' fees, related to the successful enforcement of the Settlement Agreement or other agreements referenced within Paragraph 1 herein;

4

2638206_2

18.     Upon the execution of this Settlement Agreement, the parties shall file a Stipulation of Discontinuance With Prejudice of the Action, including but not limited to Oppenheimer's claims and DocuLynx's Counterclaims;

19.     This Settlement Agreement may be amended or modified only in writing signed by the Parties;

20.     This Settlement Agreement shall be construed pursuant to the laws of the State of New York. Any action brought to enforce the terms of this Settlement Agreement shall be brought exclusively before the state or federal courts located within the State of New York and the Parties hereby consent to the jurisdiction of the same;

21.     The making of this Settlement Agreement is not intended, and shall not be construed, as an admission that any Party has violated any federal, state, or local law (including common law), ordinance or regulation, or has committed any wrong.   The Parties hereto understand and agree that this is a compromise and settlement of disputed claims to avoid further expense and protracted litigation, and that such compromise is not an admission of any liability or wrongdoing by the Parties;

22.     This Settlement Agreement and the subject matter hereof is confidential and shall not be disclosed in respect to any person, corporation, or other entity, other than the parties to the Settlement Agreement, except (a) upon written authority by all Parties to this Settlement Agreement; (b) by order of any court; (c) to the extent required by any state or federal corporate disclosure or financial report; or (d) to the extent necessary to effectuate and enforce the terms of this Settlement Agreement. Nothing herein shall prohibit DocuLynx from disclosing the terms of the additional agreement, referenced within Paragraph1 herein, to potential investors, lenders or purchasers of DocuLynx.

5

2638206_2

23.    In the event of any sale of DocuLynx or the assets of DocuLynx to a third-party, DocuLynx agrees that it shall be required to provide a copy of this Settlement Agreement and any additional agreements, as provided for within Paragraph 1 herein, to the purchaser and confirm that the purchaser is capable of performing DocuLynx's obligations hereunder prior to the close of any such transaction;

24. The parties will not make any statements or representations that disparage, demean, or impugn each other, including without limitation any statements impugning the personal or professional character of any current or former director, officer, or employee of either Company, except as required by law or compelled by subpoena.

25.    The waiver by one Party of any provision of this Settlement Agreement shall not be deemed a waiver of any other provision of this Settlement Agreement;

26.    This Settlement Agreement may be executed in counterparts and electronically.

27.    **IN WITNESS WHEREOF**, the undersigned has executed this Agreement and Release as of the date indicated hereinabove.

OPPENHEIMER & CO. INC.                     DOCULYNX, INC.


By: _John T. McGuire_                      By: _____


Title: _Deputy General Counsel_            Title: _____


Date: _9/15/17_                            Date: _____


6

2638206_2

23. In the event of any sale of DocuLynx or the assets of DocuLynx to a third-party, DocuLynx agrees that it shall be required to provide a copy of this Settlement Agreement and any additional agreements, as provided for within Paragraph 1 herein, to the purchaser and confirm that the purchaser is capable of performing DocuLynx's obligations hereunder prior to the close of any such transaction;

24. The parties will not make any statements or representations that disparage, demean, or impugn each other, including without limitation any statements impugning the personal or professional character of any current or former director, officer, or employee of either Company, except as required by law or compelled by subpoena.

25. The waiver by one Party of any provision of this Settlement Agreement shall not be deemed a waiver of any other provision of this Settlement Agreement;

26. This Settlement Agreement may be executed in counterparts and electronically.

27. **IN WITNESS WHEREOF**, the undersigned has executed this Agreement and Release as of the date indicated hereinabove.

OPPENHEIMER & CO. INC.                    DOCULYNX, INC.

By: _____               By: _____

Title _____              Title _____SVP Fin/Admin_____

Date _____               Date _____9/15/2017_____

6

2638206_2