# EXHIBIT F



230 Park Avenue
11th Floor
New York, NY 10169-0079
(212) 818-9200
(212) 818-9606 (Fax)

51 John F. Kennedy Parkway
First Floor West
Short Hills, NJ 07078-2713
(973) 218-2509
(973) 218-2401 (Fax)

www.ssbb.com

Michael H. Gibson, Esq.
Email: mgibson@ssbb.com
Direct Dial: (212) 404-8726

November 15, 2017

VIA FEDERAL EXPRESS AND EMAIL

Putney, Twombly, Hall & Hirson LLP
Attn: Thomas A. Martin, Esq.
521 Fifth Avenue
New York, New York 10175
tmartin@putneylaw.com

   Re: Oppenheimer & Co. Inc. v. DocuLynx, Inc.

Dear Mr. Martin:

  As you are aware, this firm represents Oppenheimer & Co. Inc. ("Oppenheimer") with regard to the September 15, 2017 Settlement Agreement (the "Agreement") entered into between Oppenheimer and DocuLynx, Inc. ("DocuLynx"). A copy of the Agreement is enclosed for your reference. We write this letter, pursuant to Paragraph 17 of the Agreement, to place DocuLynx on notice of its material breach of the Agreement.

  Paragraph 15 of the Agreement provides:

> Prior to being entitled to receive any Annual Installment, DocuLynx shall provide Oppenheimer with written confirmation that DocuLynx's performance under said Annual Installment has been fully bonded and that should DocuLynx cease providing services to Oppenheimer for any reason, Oppenheimer shall immediately be entitled to the return of the prorated unused portion of the respective Annual Installment...

  On Friday, November 10, 2017, your office provided Oppenheimer with the enclosed Annually Renewable Performance Bond (the "Bond") issued by Endurance Assurance Corporation ("Endurance"). However, the Bond is not in compliance with the terms of the Agreement. More specifically, our reading of Paragraph 3 of the Bond (which was confirmed by you during our conversation) is that, in the event that DocuLynx ceases providing services to Oppenheimer, Endurance has the option of either: (i) directing the escrow agent provided for

2845194_1

 SATTERLEE STEPHENS LLP                                             Page 2

Putney, Twombly, Hall & Hirson LLP
November 15, 2017

within the Agreement to continue to provide Oppenheimer access to its data; <u>or</u> (ii) returning the prorated unearned portion of the Annual Installment to Oppenheimer.

As set forth above, this is not what the Agreement provides. The Agreement makes clear that, in the event of a breach by DocuLynx, Oppenheimer's entitlement to a refund of the unearned portion of the Annual Installment and its entitlement to gain access to its data via the escrow agent are entirely independent of each other. This should come as no surprise to DocuLynx as this issue was discussed *ad nauseam*, including within several of our email exchanges.

Please take notice that if DocuLynx does not cure the above described breach of the Agreement within ten (10) days of the date of this letter, Oppenheimer reserves all of its rights, including its right to commence legal proceedings to enforce its rights under the Agreement. If such legal proceeding is required, Oppenheimer shall seek all damages to which it is entitled, including but not limited to the recovery of its attorneys' fees, as provided for within Paragraph 17 of the Agreement.

Please feel free to contact me if you wish to discuss this matter further.

                                                         Very truly yours,

                                                         Michael H. Gibson

## SETTLEMENT AGREEMENT

**WHEREAS**, Oppenheimer & Co. Inc. ("Oppenheimer") commenced a civil action against Defendant DocuLynx, Inc., as successor-in-interest to Anacomp, Inc. ("DocuLynx") (Oppenheimer and DocuLynx shall be referred to herein as the "Parties") in the United States District Court for the Southern District of New York, titled, *Oppenheimer & Co. Inc. v. DocuLynx, Inc., as successor-in-interest to Anacomp, Inc.*, Case No.: 17-CV-05940 (SHS) (the "Action"); and

**WHEREAS**, DocuLynx has alleged counterclaims against Oppenheimer in the Action (the "Counterclaims"); and

**WHEREAS**, DocuLynx denies any and all liability to Oppenheimer under the facts alleged in the Action; and

**WHEREAS**, Oppenheimer denies any and all liability to DocuLynx under the facts alleged in the Counterclaims; and

**WHEREAS**, the Parties desire to resolve the Action, including DocuLynx's Counterclaims, without the cost and time associated with litigation:

**NOW THEREFORE**, in consideration of the mutual undertakings hereinafter set forth, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby stipulate and agree as follows:

1. The Parties acknowledge that the terms of this Settlement Agreement shall be set forth in greater detail in a separate written agreement between the Parties and that the Parties agree to work in good-faith to execute any additional agreements necessary to affect the terms of this this Settlement Agreement;

2. DocuLynx acknowledges that Oppenheimer has no obligation to make payment to DocuLynx for any services allegedly provided (either prior to or following the execution of this

1

2638206_2

Settlement Agreement) except as specifically provided for within this Settlement Agreement or in any subsequent written agreement executed by the Parties;

3. DocuLynx shall continue to provide data storage services to Oppenheimer for data which was previously imaged by and is currently in the possession of DocuLynx (the "Oppenheimer Data") for a period of seven (7) years following the execution of the appropriate agreements (the "Contract Term");

4. Throughout the Contract Term, Oppenheimer shall periodically advise DocuLynx in writing with regard to any Oppenheimer Data that may be deleted. Once notified that Oppenheimer Data may be deleted, DocuLynx may delete the Oppenheimer Data at its discretion, but no later than the expiration of the Contract Term;

5. Oppenheimer shall have no obligation to provide additional data to DocuLynx for imaging and storage, nor shall DocuLynx have any obligation to accept any additional data from Oppenheimer for imaging and storage;

6. DocuLynx shall provide Oppenheimer with a perpetual license for no less than 110 users to utilize DoucLynx's software for the purpose of accessing the Oppenheimer Data during the Contract Term. This license contemplates access for regulatory compliance and the related ability to download and print reports to ensure compliance. It does not contemplate downloading, copying or printing data en masse;

7. DocuLynx acknowledges that the Oppenheimer Data belongs solely to Oppenheimer and that DocuLynx has no ownership interest in the Oppenheimer Data or right to possess the Oppenheimer Data, other than for the purposes of providing the above described services to Oppenheimer;

8. DocuLynx shall be required to hold the Oppenheimer Data in escrow with a third-party to be agreed upon by the Parties (the "Data Escrow") during the Contract Term, which agreement shall not be unreasonably withheld;

9. DocuLynx shall pay all costs associated with the Data Escrow;

10. DocuLynx acknowledges that, in the event that DocuLynx and the escrow agent shall cease providing services to Oppenheimer, Oppenheimer shall immediately be entitled to the return of the Oppenheimer Data from the Data Escrow in the same format as the Oppenheimer Data was originally provided to DocuLynx, irrespective of any claims by DocuLynx against Oppenheimer;

11. DocuLynx acknowledges that any failure on the part of DocuLynx or the Data Escrow to provide Oppenheimer with reasonable access to the Oppenheimer Data, for any reason, shall cause Oppenheimer to incur irreparable harm and that Oppenheimer shall be entitled to injunctive relief in order to prevent said irreparable harm;

12. In no event shall Doculynx be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that Doculynx shall use reasonable efforts which are consistent with accepted practices in the industry to resume performance as soon as practicable under the circumstances.

13. In exchange for the above described services, Oppenheimer agrees to compensate DocuLynx in the total sum of ONE MILLION THREE HUNDRED EIGHTY SIX THOUSAND DOLLARS AND ZERO CENTS ($1,386,000.00) (the "Contract Sum");

14. The Contract Sum shall be paid in seven (7) equal annual installments of ONE HUNDRED NINETY EIGHT THOUSAND DOLLARS AND ZERO CENTS ($198,000.00) (the "Annual Installments"), with the first Annual Installment being due three (3) business days from Oppenheimer's receipt of the first Annual Installment Bond, as described within Paragraph 14 herein. Each subsequent anniversary shall be one (1) year from the date of the execution of the additional agreement(s) referenced within Paragraph 1 herein;

15. Prior to being entitled to receive any Annual Installment, DocuLynx shall provide Oppenheimer with written confirmation that DocuLynx's performance under said Annual Installment has been fully bonded and that should DocuLynx cease providing services to Oppenheimer for any reason, Oppenheimer shall immediately be entitled to the return of the prorated unused portion of the respective Annual Installment (the "Annual Installment Bond");

16. Oppenheimer shall make payment of the Annual Installment within three (3) business days of receipt of the respective Annual Payment Bond from DocuLynx;

17. Should either party commit a material breach of this Settlement Agreement, or of any of the terms of the additional agreements referenced within Paragraph 1 herein, the other party shall provide written notice of said material breach by Federal Express. Should the breaching party fail to cure said material breach within ten (10) days of written notice of default, the other party shall be entitled to recover any fees and costs incurred, including reasonable attorneys' fees, related to the successful enforcement of the Settlement Agreement or other agreements referenced within Paragraph 1 herein;

4

18. Upon the execution of this Settlement Agreement, the parties shall file a Stipulation of Discontinuance With Prejudice of the Action, including but not limited to Oppenheimer's claims and DocuLynx's Counterclaims;

19. This Settlement Agreement may be amended or modified only in writing signed by the Parties;

20. This Settlement Agreement shall be construed pursuant to the laws of the State of New York. Any action brought to enforce the terms of this Settlement Agreement shall be brought exclusively before the state or federal courts located within the State of New York and the Parties hereby consent to the jurisdiction of the same;

21. The making of this Settlement Agreement is not intended, and shall not be construed, as an admission that any Party has violated any federal, state, or local law (including common law), ordinance or regulation, or has committed any wrong. The Parties hereto understand and agree that this is a compromise and settlement of disputed claims to avoid further expense and protracted litigation, and that such compromise is not an admission of any liability or wrongdoing by the Parties;

22. This Settlement Agreement and the subject matter hereof is confidential and shall not be disclosed in respect to any person, corporation, or other entity, other than the parties to the Settlement Agreement, except (a) upon written authority by all Parties to this Settlement Agreement; (b) by order of any court; (c) to the extent required by any state or federal corporate disclosure or financial report; or (d) to the extent necessary to effectuate and enforce the terms of this Settlement Agreement. Nothing herein shall prohibit DocuLynx from disclosing the terms of the additional agreement, referenced within Paragraph1 herein, to potential investors, lenders or purchasers of DocuLynx.

23. In the event of any sale of DocuLynx or the assets of DocuLynx to a third-party, DocuLynx agrees that it shall be required to provide a copy of this Settlement Agreement and any additional agreements, as provided for within Paragraph 1 herein, to the purchaser and confirm that the purchaser is capable of performing DocuLynx's obligations hereunder prior to the close of any such transaction;

24. The parties will not make any statements or representations that disparage, demean, or impugn each other, including without limitation any statements impugning the personal or professional character of any current or former director, officer, or employee of either Company, except as required by law or compelled by subpoena.

25. The waiver by one Party of any provision of this Settlement Agreement shall not be deemed a waiver of any other provision of this Settlement Agreement;

26. This Settlement Agreement may be executed in counterparts and electronically.

27. **IN WITNESS WHEREOF**, the undersigned has executed this Agreement and Release as of the date indicated hereinabove.

| OPPENHEIMER & CO. INC. | DOCULYNX, INC. |
|---|---|
| By: *John T. McGuire* (signature) | By: |
| Title: Deputy General Counsel | Title: |
| Date: 9/15/17 | Date: |

6

2638206_2

23. In the event of any sale of DocuLynx or the assets of DocuLynx to a third-party, DocuLynx agrees that it shall be required to provide a copy of this Settlement Agreement and any additional agreements, as provided for within Paragraph 1 herein, to the purchaser and confirm that the purchaser is capable of performing DocuLynx's obligations hereunder prior to the close of any such transaction;

24. The parties will not make any statements or representations that disparage, demean, or impugn each other, including without limitation any statements impugning the personal or professional character of any current or former director, officer, or employee of either Company, except as required by law or compelled by subpoena.

25. The waiver by one Party of any provision of this Settlement Agreement shall not be deemed a waiver of any other provision of this Settlement Agreement;

26. This Settlement Agreement may be executed in counterparts and electronically.

27. IN WITNESS WHEREOF, the undersigned has executed this Agreement and Release as of the date indicated hereinabove.

OPPENHEIMER & CO. INC.                                          DOCULYNX, INC.

By: _____                                     By: _____[signature]_____

Title: _____                                    Title: __SVP Fin/Admin__

Date: _____                                     Date: __9/15/2017__

## Sompo International
## Annually Renewable Performance Bond
## BOND # <u>EACX124000217</u>

KNOW ALL MEN BY THESE PRESENTS: That DocuLynx, Inc. (hereinafter called the Principal), and Endurance Assurance Corporation (hereinafter called the Surety), are held and firmly bound unto Oppenheimer & Co. Inc. (hereinafter called the Obligee), in the penal sum of One Hundred Ninety Eight Thousand and ------------ 00/100 Dollars ($198,000.00), the payment of which sum, well and truly to be made, the said Principal and Surety bind themselves, and each of their heirs, administrators, executors, and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal and Obligee have entered into a written Agreement dated the 15th day of September, 2017 for a Settlement Agreement in the case titled "Oppenheimer & Co. Inc. v. Doculynx, Inc. As successor-in-interest to Anacomp, Inc., Case No. 17-CV-05940 for a period of Seven (7) years which Agreement is hereby referred to and made a part hereof.

WHEREAS, the Obligee has agreed to accept a bond guaranteeing the performance of said Agreement for a period of one year.

NOW, THEREFORE, THE CONDITIONS OF THE ABOVE OBLIGATION IS SUCH, that if the Principal shall well and truly perform each and every obligation in said Agreement at the time and in the manner specified during the term of this bond, and shall reimburse said Obligee for any loss which said Obligee may sustain by reason of failure or default on the part of said Principal, than this obligation shall be void, otherwise to remain in full force and effect.

PROVIDED, HOWEVER, that this bond is subject to the following conditions:

1. This bond is for the term beginning 9/15/17 and ending 9/15/18. The bond may be renewed for additional terms at the option of the surety, by continuation certificate executed by the Surety. Neither non-renewal by the surety, nor failure, nor inability of the Principal to file a replacement bond shall constitute a loss to the Obligee recoverable under this bond.

2. This bond may be canceled upon the written consent of the Obligee, or by the Surety delivering thirty (30) days written notice to the Obligee of its desire to terminate this bond. Such cancellation or termination shall not affect any liability incurred or accrued thereunder prior to termination or cancellation.

3. In the event of default by the Principal, Obligee shall deliver to Surety by certified mail, a written statement of the facts of such default, within thirty (30) days of the occurrence. In the event of default, the Surety will have the right and opportunity, at its sole discretion, to: a) cure the default; b) assume the remainder of the Agreement and to perform or sublet same; c) or to tender to the Obligee funds sufficient to pay the cost of completion less the balance of the Agreement price up to an amount not to exceed the penal sum of the bond. In no event shall the Surety be liable for fines, penalties, liquidated damages, forfeitures, court costs or attorney's fees assessed against the Principal.

4. No claim, action, suit or proceeding, except as hereinafter set forth, shall be had or maintained against the Surety on this instrument unless same be brought or instituted upon the Surety within one year from termination or expiration of the bond term.

5. No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrator or successors of Obligee.

6. The aggregate liability of the surety is limited to the penal sum stated herein regardless of the number or amount of claims brought against this bond and regardless of the number of years this bond remains in force.

7. If any conflict or inconsistency exists between the Surety's obligations or undertakings as described in this bond and as described in the underlying Agreement, then the terms of this bond shall prevail.

8. This bond shall not bind the Surety unless the bond is accepted by the Obligee. If the Obligee objects to any language contained herein, within 30 days of the date this bond is signed and sealed by the Surety, Obligee shall return this bond, certified mail or express courier, to the Surety at its address at:

Sompo International - Surety
Attention: Eric Altman
1221 Avenue of the Americas
New York, NY  10020

Failure to return the bond as described above shall constitute Obligee's acceptance of the terms and conditions, herein.

Signed and sealed this 9th day of November, 2017.

PRINCIPAL:                                         SURETY:
Document Inc.                    (seal)           Endurance Assurance Corporation (seal)

Name: Karl Schuster                               Tom Branigan, Attorney-in-Fact
Title: SVP Finance

| CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT |
|---|

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ___Los Angeles___

On ___NOV 0 9 2017___ before me, Sam Fazzini, Notary Public, personally appeared ___Tom Branigan___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___[signature]___
Signature of Notary Public

# ENDURANCE ASSURANCE CORPORATION

## POWER OF ATTORNEY

POAA000008077 124

*Know all Men by these Present*, that ENDURANCE ASSURANCE CORPORATION, a Delaware corporation (the "Corporation"), with offices at 4 Manhattanville Road, 3rd Floor, Purchase, NY 10577, has made, constituted and appointed and by these presents, does make, constitute and appoint TOM BRANIGAN, NATHAN VARNOLD, JAMES ROSS, DARAVY MADY its true and lawful Attorney(s)-in-fact, at SAN FRANCISCO in the State of CA and each of them to have full power to act without the other or others, to make, execute and deliver on its behalf, as surety or co-surety: bonds and undertakings given for any and all purposes, also to execute and deliver on its behalf as aforesaid renewals, extensions, agreements, waivers, consents or stipulations relating to such bonds or undertakings provided, however, that no single bond or undertaking so made, executed and delivered shall obligate the Corporation for any portion of the penal sum thereof in excess of the sum of TEN MILLION Dollars ($10,000,000).

Such bonds and undertakings for said purposes, when duly executed by said attorney(s)-in-fact, shall be binding upon the Corporation as fully and to the same extent as if signed by the President of the Corporation under its corporate seal attested by its Corporate Secretary.

This appointment is made under and by authority of certain resolutions adopted by the Board of Directors of the Corporation by unanimous written consent on the 9th of January, 2014, a copy of which appears below under the heading entitled "Certificate".

This Power of Attorney is signed and sealed by facsimile under and by authority of the following resolution adopted by the Board of Directors of the Corporation by unanimous written consent on January 9, 2014 and said resolution has not since been revoked, amended or repealed:

RESOLVED, that in granting powers of attorney pursuant to certain resolutions adopted by the Board of Directors of the Corporation by unanimous written consent on January 9, 2014, the signature of such directors and officers and the seal of the Corporation may be affixed to any such power of attorney or any certificate relating thereto by facsimile, and any such power of attorney or certificate bearing such facsimile signature or seal shall be valid and binding upon the Corporation in the future with respect to any bond or undertaking to which it is attached.

This Power of Attorney shall expire and all authority hereunder shall terminate without notice at midnight (Standard Time where said attorney(s)-in-fact is authorized to act.) December 7, 2019

IN WITNESS WHEREOF, the Corporation has caused these presents to be duly signed and its corporate seal to be hereunto affixed and attested this 8th day of March, 2017 at Purchase, New York.

(Corporate Seal)
ATTEST

*Marianne L. Wilbert*
MARIANNE L. WILBERT, SENIOR VICE PRESIDENT

ENDURANCE ASSURANCE CORPORATION

By *Sharon L. Sims*
SHARON L. SIMS, SENIOR VICE PRESIDENT

STATE OF NEW YORK    ss: PURCHASE
COUNTY OF WESTCHESTER

On the 8th day of March, 2017 before me personally came SHARON L. SIMS, SENIOR VICE PRESIDENT to me known, who being by me duly sworn, did depose and say that (s)he resides in SCOTCH PLAINS, NEW JERSEY that (s)he is a SENIOR VICE PRESIDENT of ENDURANCE ASSURANCE CORPORATION, the Corporation described in and which executed the above instrument; that (s)he knows the seal of said Corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Corporation, and that (s)he signed his (her) name thereto by like order.

(Notarial Seal)

NICHOLAS JAMES BENENATI, Notary Public - My Commission Expires 12/07/2019

## CERTIFICATE

STATE OF NEW YORK    ss: PURCHASE
COUNTY OF WESTCHESTER

I, CHRISTOPHER DONELAN the PRESIDENT of ENDURANCE ASSURANCE CORPORATION, a Delaware Corporation (the "Corporation"), hereby certify:

1. That the original power of attorney of which the foregoing is a copy was duly executed on behalf of the Corporation and has not since been revoked, amended or modified; that the undersigned has compared the foregoing copy thereof with the original power of attorney, and that the same is a true and correct copy of the original power of attorney and of the whole thereof;

2. The following are resolutions which were adopted by the Board of Directors of the Corporation by unanimous written consent on January 9, 2014 and said resolutions have not since been revoked, amended or modified.

"RESOLVED, that each of the individuals named below is authorized to make, execute, seal and deliver for and on behalf of the Corporation any and all bonds, undertakings or obligations in surety or co-surety with others:

CHRISTOPHER DONELAN, SHARON L. SIMS, MARIANNE L. WILBERT

And be it further

RESOLVED, that each of the individuals named above is authorized to appoint attorneys-in-fact for the purpose of making, executing, sealing and delivering bonds, undertakings or obligations in surety or co-surety for and on behalf of the Corporation."

3. The undersigned further certifies that the above resolutions are true and correct copies of the resolutions as so recorded and of the whole thereof

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal this       day of       , 20      NOV 0 9 2017

(Corporate Seal)

*Christopher Donelan*
CHRISTOPHER DONELAN, PRESIDENT

Any reproductions are void.
Primary Surety Claims Submission: suretybondclaims@endurancesrevices.com
Surety Claims Hotline: 877-676-7575
Mailing Address: Endurance Surety Claims Department, 750 Third Avenue – 10th Floor, New York, NY 10017